UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jose H.V.,[1]

Petitioner,

Case No. 26-cv-3406 (ECT/LIB)

v.

**REPORT AND RECOMMENDATION**

Todd Blanche, et al.,

Respondents.

Pursuant to a referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Jose H.V.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Jose H.V.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein.

## I. Background

Petitioner is a native and citizen of Mexico. (Sabin Decl. [Docket No. 8] ¶ 4). Petitioner entered the United States without inspection in April 1996. (Id.; Petitioner [Docket No. 1] ¶ 39). On November 14, 2015, Petitioner applied for a nonimmigrant U visa, (Petitioner [Docket No. 1] ¶ 3), and on January 3, 2019, Petitioner's application for a nonimmigrant U visa was approved. (Sabin Decl. [Docket No. 8] ¶ 5). That U visa expired on January 2, 2023. (Id.).

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because a hearing on the Petitioner's claim would not aid the Court in its consideration of Petitioner's claim. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

On July 22, 2025, Petitioner allegedly failed to appear for state court proceedings related to an alleged traffic violation. (Petition [Docket No. 1] ¶ 41; Warrant [Docket No. 7-2]). Thereafter, a Minnesota state court issued a warrant authorizing Petitioner's arrest. (Petition [Docket No. 1] ¶ 41)

On March 15, 2026, Petitioner was arrested pursuant to the state court warrant during a routine traffic stop. (See Id.; Sabin Decl. [Docket No. 8] ¶ 6; Warrant [Docket No. 7-2]). Petitioner was taken to the Dakota County Jail. (Sabin Decl. [Docket No. 8] ¶¶ 7–12).

On March 16, 2026, officials with Immigration and Customs Enforcement ("ICE") learned Petitioner was being released from the Dakota County Jail. (Id.). After learning that Petitioner was being released from the Dakota County Jail, officials from ICE lodged a detainer with the Dakota County Jail regarding Petitioner. (Id.). At an unspecified time on March 16, 2026, ICE issued an administrative warrant purporting to authorize Petitioner's arrest. (Id.). At some other unspecified time on March 16, 2026, ICE issued a Notice to Appear incorrectly charging Petitioner as removable under Immigration and Nationality Act ("INA") §§ 212(a)(6) and 212(a)(7). (Id.).

At yet some other unspecified time on March 16, 2026, ICE officers arrested Petitioner at the Dakota County Jail. (Id.). The ICE official provided Petitioner with a copy of the purported administrative warrant. (Id.).

On May 5, 2026, ICE issued an "Additional Charges of Inadmissibility/Deportability" form charging Petitioner as deportable under INA § 237(a)(1)(B). (Id. ¶ 11). There is no indication in the record when, or if, that "Additional Charges of Inadmissibility/Deportability" form was provided to Petitioner. (See Id.).

On July 27, 2026, an immigration judge ordered Petitioner removed from the United States. (Id. ¶ 12).[3] Petitioner did not waive his right to appeal, and thus, that removal order is not yet administratively final. (See Id.).

## II. Discussion

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that habeas remedy remains available, District Courts have been vested with the jurisdictional authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); 28 U.S.C. §§ 2241(a), 2241(c)(3). The District Court's habeas jurisdiction includes the authority to adjudicate habeas challenges to an individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).[4]

As noted above, Petitioner argues that he is entitled to immediate release because ICE officers lacked any constitutionally permissible basis to arrest him on March 16, 2026. (Petition [Docket No. 1] ¶¶ 4, 8, 42, 65–77). In support of that argument, Petitioner asserts that his arrest

[3] At the administrative hearing, Respondents conceded that the initial charges in the Notice to Appear (i.e., §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I)) were contradicted by the additional charges (i.e., § 237(a)(1)(B)) added against Petitioner, and therefore, the initial charges under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) were not sustained by the immigration judge. (Seruelo Decl. [Docket No. 10-1]).

[4] Once an individual enters the United States the individual's legal circumstances change because the Due Process Clause applies to all persons within the United States, including individuals who entered unlawfully. A. A. R. P. v. Trump, 605 U.S. 91, 94 (2025) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)); Zadvydas, 533 U.S. at 690. Immigration related detention violates an individual's due process rights unless there is a "special justification" which "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

was unconstitutional because ICE officers lacked a valid warrant authorizing his arrest and failed to satisfy the requirements for a warrantless arrest under 8 U.S.C. § 1357(a)(2). (Id.). Petitioner argues that the Form I-200 warrant purporting to authorize his arrest was invalid because the record fails to establish that the Form I-200 warrant was issued at the same time or after the Notice to Appear was issued as required by 8 C.F.R. § 236.1(b). (See Id.; Petitioner's Mem. [Docket No. 9]).

Respondents contend that Petitioner is not entitled to the requested habeas relief. Respondents first argue that Petitioner's arrest and detention do not violate any substantive due process right because his detention is constitutionally permissible during removal proceedings. (Respondents Mem. [Docket No. 6] at 3–5). Respondents next argue that Petitioner's arrest was lawfully made pursuant to a valid warrant because Petitioner received the Notice to Appear at some unspecified time on the day of his arrest and both the Notice to Appear and Form I-200 warrant were issued on that same day. (Id. at 5–8). Lastly, Respondents argue that even assuming Petitioner's arrest was warrantless, the arrest was nevertheless permissible because it meets the standards of 8 U.S.C. § 1357(a)(2). (Id. at 8–12).

"Like any federal agency, ICE 'literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute.'" Jose V.P.R. v. Sheriff of Freeborn County, No. 26-cv-3047 (NEB/DLM), 2026 WL 2546265, at *1 (D. Minn. Aug. 28, 2026) (quoting Luis A.S. v. Easterwood, No. 26-cv-2447 (PJS/DTS) (D. Minn. May 26, 2026), ECF No. 9 at 2). The Immigration and Nationality Act ("INA") provides "two mechanisms by which it is appropriate to arrest [a noncitizen] during the removal process." Pedro D.C. v. Blanche, No. 26-cv-2450 (KMM/DLM), 2026 WL 1759444, at *1 (D. Minn. June 18, 2026) (cleaned up) (quoting Cesar F.F. v. Blanche, No. 26-cv-2540 (PJS/DTS), Order [Docket No. 8]

at 3 (D. Minn. June 2, 2026)); see Jose V.P.R., 2026 WL 2546265, at *1. First, a noncitizen undergoing the removal process can be arrested and detained pursuant to a valid warrant issued by the Attorney General. See 8 U.S.C. § 1226(a). Second, a noncitizen undergoing the removal process can be arrested without a warrant under limited circumstances pursuant to 8 U.S.C. § 1357(a)(2).[5]

In the present case, Respondents have failed to demonstrate that Petitioner's arrest was made pursuant to either of these two mechanisms, and Respondents do not offer any other constitutional basis to support Petitioner's March 16, 2026, arrest. Thus, Petitioner's arrest was effectuated without any constitutional authority.

**A. Form I-200 Warrant**

As noted above, "on a warrant issued by the Attorney General, a non-citizen may be arrested and detained pending a decision on whether the non-citizen is to be removed from the United States." Jose S. v. Blanche, No. 26-cv-3605 (JMB/EMB), 2026 WL 2474748, at *3 (D. Minn. Aug. 24, 2026) (cleaned up) (quoting 8 U.S.C. § 1226(a)); see Pedro D.C., 2026 WL 1759444, at *1.[6] However, because the authority of a Form I-200 warrant is limited to noncitizens then-currently undergoing the removal process, a Form I-200 warrant is valid only if it is issued at the same time or after the issuance of a Notice to Appear. See, e.g., 8 C.F.R. § 236.1(b)(1); Jose S., 2026 WL 2474748, at *3; Martha C.G.P. v. Blanche, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026); Pedro D.C., 2026 WL 1759444, at *1. "This is because" a Notice to Appear "is a case-initiating pleading—like an

---

[5] In relevant part, 8 U.S.C. § 1357(a)(2) provides that a noncitizen may be arrested without a warrant if the arresting officer has "reason to believe that the [noncitizen] so arrested is in the United States in violation of any [immigration law] and is likely to escape before a warrant can be obtained for his arrest . . . ." 8 U.S.C. § 1357(a)(2). "Reason to believe" in this context means "probable cause that the Fourth Amendment requires for a valid arrest." United States v. Sanchez-Velasco, 956 F.3d 576, 581 (8th Cir. 2020) (quoting United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010)).

[6] Such a warrant is referred to as a Form I-200 warrant or an I-200 warrant.

indictment in a criminal case—that serves as the basis for commencing a grave legal proceeding." Alejandro C.G. v. Blanche, No. 26-cv-3117 (ECT/EMB), 2026 WL 2838175, at *3 (D. Minn. Sept. 22, 2026) (cleaned up) (citing Jesus F.D. v. Mullin, No. 26-cv-2486 (PJS/DTS), slip. op. at 5–6 (D. Minn. June 10, 2026), ECF No. 10).

In the present case, the Form I-200 administrative warrant was not valid because there is simply no indication in the record upon which the Court could reasonably conclude that the Notice to Appear for Petitioner was issued before the Form I-200 warrant. Although both the Notice to Appear and Form I-200 warrant were both issued on March 16, 2026, the declarations submitted by Respondents lack any indication that the Notice to Appear was issued before the Form I-200 warrant. Indeed, the declaration submitted by Respondents and their memorandum both take great pains not to assert whether the Notice to Appear or Form I-200 Warrant was issued first.[7] The Court cannot simply assume the Form I-200 warrant was issued at the same time or after the issuance of the Notice to Appear merely because they were issued on the same day. See, e.g., Pedro D.C., 2026 WL 1759444, at *2; Gomez v. Blanche, No. 26-cv-4329 (JMB/LIB), Order [Docket No. 14] at 10–11 (D. Minn. October 19, 2026). "Thus, the Form I-200 was plainly invalid under 8 C.F.R. § 236.1(b), and Respondents detained [Petitioner] without a required warrant." Jose S., 2026 WL 2474748, at *3; see, e.g., Martha C.G.P., 2026 WL 1329577, at *3; Jose V.P.R., 2026 WL 2546265, at *2; Alejandro C.G., 2026 WL 2838175, at *2–3; Islamuddin A. v. Blanche, No. 26-cv-3340 (ECT/JFD), 2026 WL 2546280, at *2–3 (D. Minn. Aug. 28, 2026); Simon F.B.S. v. Tollefson, No. 26-cv-3968 (JRT/LIB), 2026 WL 2838367, at *2 (D. Minn. Sept. 22, 2026); Jose M. v. Blanche, No. 26-cv-3927 (JMB/JFD), 2026 WL 2690238, at *2–3 (D. Minn. Sept. 14, 2026).

[7] Respondents fail to even argue that the Notice to Appear was issued before the Form I-200 warrant. (See Respondents' Mem. [Docket No. 6]).

Respondents argue that even if the Form I-200 was issued before the Notice to Appear in violation of 8 C.F.R. § 236.1(b), the Form I-200 is still valid because "the mere violation of regulation would not invalidate the warrant or justify release." (Respondents' Mem. [Docket No. 6] at 5). Respondents are incorrect.

"The language of the regulation is clear—the sequencing matters and an NTA must be issued before a Form I-200. The Form I-200 warrant empowers ICE to arrest noncitizens during removal proceedings, and the NTA is what initiates removal proceedings." Jose V.P.R., 2026 WL 2546265, at *2. Put differently, if a Form I-200 warrant was issued before a Notice to Appear was issued, then that Form I-200 warrant was issued before and outside of removal proceeding. And "a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." Id. (quoting Jesus F.D. v. Mullin, No. 26-cv-2486 (PJS/DTS) (D. Minn. June 10, 2026), ECF No. 10 at 5–6). "Respondents' argument that Form I-200 documents are valid if they are issued after, or irrespective of, the time of issuance of the NTA contradicts the plain language of section 236.1(b) and lacks any legal support." Jose S., 2026 WL 2474748, at *3.

Respondents also argue that a Form I-200 warrant issued before a Notice to Appear is nevertheless valid because 8 U.S.C. § 1226(a) does not contain any language regarding the need for a Notice to Appear. (Respondents' Mem. [Docket No. 6] at 5–7). Respondents are again incorrect and read § 1226(a) too narrowly. Title 8 U.S.C. § 1226(a) specifically provides that it authorizes the Attorney General to issue a warrant for the arrest and detention of a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). The arrest and detention of a noncitizen cannot be "pending a decision on

whether the [noncitizen] is to be removed from the United States," if there is no pending removal proceeding, and it is the Notice to Appear which initiates a removal proceeding.

In summation, the Form I-200 warrant which purports to authorize Petitioner's arrest was not valid at the time of Petitioner's arrest. Thus, the March 16, 2026, Form I-200 warrant is not a constitutionally permissible basis to arrest Petitioner.

**B. Probable Cause Arrest under 8 U.S.C. § 1357(a)(2)**

Respondents next argue that even if Petitioner's arrest was made without a valid warrant, the arrest was nevertheless constitutionally permissible because it met the standards for a warrantless arrest under 8 U.S.C. § 1357(a)(2) given that, according to Respondents, the unidentified arresting officers had the requisite probable cause to arrest Petitioner. (See Respondents' Mem. [Docket No. 6] at 8–12). In support of this argument, Respondents assert that "Petitioner was clearly an escape risk at the time he was released from the Dakota County Jail" because he "spent nearly 30 years evading immigration detection in the United States" and because he had been in the Dakota County Jail based on a failure to appear at a criminal hearing the prior year. (Id. at 12). Respondents' argument is unpersuasive and unsupported by the factual record.

Under § 1357, an immigration official may arrest a noncitizen without a warrant "if [the officer] has reason to believe that the" noncitizen "is in the United States in violation of any" immigration "law or regulation and is likely to escape before a warrant can be obtained for [the noncitizen's] arrest." 8 U.S.C. § 1357(a)(2). In the context of a warrantless arrest under § 1357(a)(2), reason to believe "means constitutionally required probable cause." United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010); Pedro D.C., 2026 WL 1759444, at *2 (quoting Quintana). The question then "is not merely whether" a noncitizen will flee from the present

encounter with officers, "but whether ICE would be able to locate [the noncitizen] after obtaining a warrant for his arrest." Jose V.P.R. v. Sheriff, No. 26-cv-3047 (NEB/DLM), 2026 WL 2546265, at *3 (D. Minn. Aug. 28, 2026).

Based on the evidentiary record, there is at least some indication that ICE had reasons to believe that Petitioner was present in the United States in violation of immigration laws when ICE officers arrested Petitioner at the Dakota County Jail.[8] However, based on the same evidentiary record, Respondents have wholly failed to demonstrate that the ICE officers who arrested Petitioner "had reason to believe" Petitioner was "likely to escape before a warrant" could be obtained for his arrest.

Respondents conclusorily assert that Petitioner had been "evading immigration detection" for 30 years and therefore, according to Respondents, Petitioner was likely to escape before a warrant could be obtained. Respondents' assertion is unpersuasive and unsupported by the record. As a threshold matter, there is no evidence in the record to suggest that Petitioner has ever evaded immigration detection because there is no evidence in the record that immigration officials ever attempted unsuccessfully to locate Petitioner before his March 16, 2026, arrest.[9] Moreover, although Petitioner entered the United States in April 1996, Petitioner applied for a U visa in November 2014, and after his U visa was eventually approved, it did not expire until January 2, 2023, which is less than four years ago.

---

[8] The detainer for Petitioner, which ICE issued to the Dakota County Jail before Petitioner's arrest, notes that the detainer is based on ICE's determination that Petitioner is present in the United States in violation of immigration laws. (Detainer [Docket No. 8-3]). And Petitioner does not meaningfully contest Respondents' assertion that ICE had reason to believe that Petitioner was present in the United States in violation of immigration laws at the time of his arrest.

[9] In fact, it appears from the record that ICE either had Petitioner's home address or could have obtained that address with the expenditure of only minimal effort. Respondents themselves submitted the April 21, 2025, state court criminal Complaint charging Petitioner with motor vehicle violation which contains Petitioner's home address. (Compl. [Docket No. 7-1] at 1). The same home address is present on the "Defendant Fact Sheet" which Respondents submitted. (Defendant Fact Sheet [Docket No. 7-1] at 5). This even further diminishes Respondents' assertion that Petitioner was "evading" immigration officials. See Islamuddin A., 2026 WL 2794242, at *3.

Respondents also unpersuasively argue that Petitioner was "an escape risk" because he had been in the Dakota County Jail based on a failure to appear at a criminal hearing the prior year. However, Petitioner's alleged criminal history alone is insufficient to establish likely "probable cause of flight before a warrant could be obtained." Ahmed S. v. Blanche, No. 26-cv-2265 (KMM/DLM), 2026 WL 1998718, at *6 (D. Minn. July 10, 2026). "The relevant inquiry is not whether the noncitizen has failed to be law-abiding in the past, but 'whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" Id. (quoting Walther Ademir A.S. v. Blanche, No. 26-cvV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026)). Indeed, "ICE has an obligation to make a 'particularized assessment' into whether a person is likely to evade law enforcement." Id. (quoting Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017)). Here, Respondents do not even argue, much less point to any evidence demonstrating, that the ICE officers who arrested Petitioner on March 16, 2026, made any such particularized assessment.

Other reasons in the record counter any persuasiveness of Respondents' arguments here. Although Respondents generally point to the length of time Petitioner has been in the United States and his alleged failure to appear for an unrelated state court proceeding in a traffic case as evidence that a "reasonable officer" would conclude Petitioner was an imminent flight risk, Respondents do not point to any evidence demonstrating that the ICE officers who arrested Petitioner had any such information. The inquiry here is not whether Respondents' counsel's post hoc review of the record can establish probable cause; instead, the question is whether the arresting officers themselves then had probable cause to believe Petitioner was likely to escape before a warrant for his arrest could be obtained. See, e.g., Islamuddin A. v. Blanche, No. 26-cv-3340 (ECT/JFD), 2026 WL 2794242, at *3 (D. Minn. Aug. 6, 2026), report and recommendation

adopted, 2026 WL 2546280 (D. Minn. Aug. 28, 2026). In fact, Respondents fail to offer any evidence whatsoever regarding the knowledge of the unidentified arresting officers at the time of Petitioner's March 16, 2026, arrest. "That leaves the Court with only counsel's arguments made in a brief," which are plainly insufficient to establish that at the time of Petitioner's March 16, 2026, arrest the arresting officers had probable cause to believe Petitioner was then likely to escape before a warrant for his arrest could be obtained. See, e.g., Id. Argument of counsel is itself not evidence.

In short, Respondents have failed to demonstrate that the arresting officers, at the time of Petitioner's arrest, had reason to believe that Petitioner was likely to escape before a warrant for his arrest could be obtained. Thus, 8 U.S.C. § 1357 cannot serve as a constitutional justification for Petitioner's March 16, 2026, arrest.

**C. Summation**

In summation, Petitioner has met his burden of demonstrating, by a preponderance of the evidence, that his March 16, 2026, arrest was unlawful, and that the arresting officers lacked any constitutionally permissible basis for that arrest. Because the arresting officers arrested and detained Petitioner without any constitutionally permissible basis for doing so, Petitioner is entitled to immediate release. See, e.g., Walter L. v. Todd, No. 26-cv-4503 (JMB/SGE), 2026 WL 3152203, at *5 (D. Minn. Oct. 21, 2026) (collecting cases); Jose S., 2026 WL 2474748, at *3; Simon F.B.S. v. Tollefson, No. 26-cv-3968 (JRT/LIB), 2026 WL 2838367, at *2 (D. Minn. Sept. 22, 2026); Abdirahman A. v. Blanche, No. 26-cv-3086 (ECT/DLM), 2026 WL 2824339, at *2 (D. Minn. Sept. 21, 2026); Jose V.P.R., 2026 WL 2546265, at *3; Alejandro C.G., 2026 WL 2838175, at *4; Pedro D.C., 2026 WL 1759444, at *2.

## III. Objection Period

One last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by the typical objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the habeas relief recommended by the undersigned would be materially diminished.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to five (5) days, and correspondingly, the Court reduces to five (5) days the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended habeas relief here.

## IV. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Jose H.V.'s Petition for a Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**, as set forth herein;
2. Respondents be required to immediately release Petitioner in Minnesota without subjecting him to any conditions;
3. Respondents be required to release Petitioner with all his personal effects, as well as, all identification documents and immigration documentation seized during his arrest; and
4. Respondents be required to confirm Petitioner's release in Minnesota from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation.

Dated: October 28, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE